The defendant, Howard Luther Dickerson, was convicted of owning, or having in his possession, or under his control, a pistol, after having been convicted of a violent crime, which violated § 13A-11-72(a), Ala. Code (1975). He was sentenced to 45 years in the state penitentiary pursuant to the Habitual Felony Offender Act. The petition for writ of certiorari was granted by this Court in order to review the issue of the failure of the State to produce an allegedly exculpatory video tape. We reverse and remand.
On February 13, 1985, Dickerson and his wife were observed by City of Anniston police officers as they arrived, by automobile, at their place of business. The prosecution attempted to establish that the defendant, after he emerged from the automobile, had constructive possession of a pistol which remained in the car. Several police officers strongly emphasized that as they approached the defendant, he looked back toward the car, made a sudden move toward the car, then stopped. One police officer stated that he looked past the open car door, saw a pistol butt sticking up from between the front seats, and placed Dickerson under arrest.
It is undisputed that the gun and the car were owned by the defendant's wife, and the only evidence linking the pistol to Dickerson was the fact that the pistol was found in the car from which he had just emerged. One fingerprint of the defendant was found on the pistol but this could have been placed on it at any time within the 12 months prior to the arrest.
At the hearing on the motion for a new trial, the defendant produced an affidavit from a witness who stated that he had observed the incident and that at the time of the arrest the car door was closed and that the defendant never moved toward the car after being approached by the police. Additionally, one police officer filmed the movements of the defendant, and the witness claims that the video tape would have depicted the defendant away from the automobile and would have shown the door to be closed, and that the defendant made no movement toward the automobile once the police officers appeared in the area. This video tape was subsequently erased or filmed over because the police officer "did not think" it was relevant or material.
There are several inconsistent statements by the police officers as to exactly what was on the film. One officer testified that the video tape showed police officers running toward the defendant and showed that the car door was open, then just the sky and the camera operator's feet. Another officer testified that the tape displayed an officer holding the defendant, then sky and rocks. Later, the same officer stated that there was nothing on the tape but sky and rocks. *Page 630 
The prosecutor was not aware of the existence of the tape prior to the hearing on the motion for new trial, but under controlling authority, the good faith or bad faith of the prosecution is irrelevant.
The issue before us is whether the defendant was unduly prejudiced by the prosecution's failure to produce the potentially exculpatory video tape after the defendant had specifically sought production of it.
Due to the decision in Brady v. Maryland, 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the rule applicable to this type of situation is known as the Brady rule. The Brady
decision enunciated the standard to be applied in determining whether a new trial is warranted because of the prosecution's alleged suppression of exculpatory evidence. In that case the United States Supreme Court held:
 "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."
In order to establish a Brady violation, the defendant must establish the following elements: 1. that the prosecution suppressed the evidence; 2. that the evidence was of a character favorable to the defense; and 3. that the evidence was material. Kennedy v. State, 472 So.2d 1106 (Ala. 1985).
There is no question that the video tape was suppressed and that it has been destroyed; therefore, the first requirement to establish a Brady violation has been satisfied.
In United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375,87 L.Ed.2d 481 (1985), the Supreme Court stated:
 "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. . . . The reviewing court should assess the probability that such effect might have occurred in light of the totality of the circumstances."
There is authority that evidence which is both favorable and unfavorable to the defendant must be disclosed under Brady,Sellers v. Estelle, 651 F.2d 1074, 1077 (5th Cir. 1981), but this requirement does not include inculpatory evidence. UnitedStates v. Cochran, 697 F.2d 600, 605 (5th Cir. 1983).
If the video tape had been available and had shown that the defendant was away from the car and that he never made any movements toward the car and that the car door was closed, then there would have been a reasonable probability that the result of the proceeding would have been different. Therefore, the evidence depicted by the video tape was material.
With two of the three requisite elements of a Brady violation having been established, the sole remaining issue is whether it was shown that the evidence was favorable to the defendant.
The State put much emphasis on the movements of the defendant and the fact that the car door was open. There was testimony from the police officers that the video tape showed the police officers' approach, and one officer even stated that it showed the defendant being held by a police officer. After that point, he said, the tape just showed sky and rocks. If the tape would have shown exactly what the state emphasized, why was the tape destroyed? The State's "chief business is not to achieve victory but to establish justice." Brady, supra, at n. 2.
It is not in the interest of justice to permit the prosecution, in its unfettered discretion, to determine the favorable or unfavorable nature of potentially exculpatory evidence, and then allow the prosecution to destroy the evidence, thereby forcing the defendant to establish the favorable nature of evidence that no longer exists. In the present case, since the prosecution was attempting to establish constructive possession of the pistol, the video tape would have been favorable to the defendant if it showed that the defendant was away from the car and that the car door *Page 631 
was closed. Through inconsistent statements, the police officers attempted to establish that the video tape was not favorable to the defendant because the tape depicted only a portion of the arrest scene. Additionally, the prosecution summarized that the video tape was immaterial because several officers had testified as to the same evidence that would have been depicted by the video tape.
The fact remains that the police officers intentionally destroyed the video tape after making their own determination as to its favorable or unfavorable nature. This act substantially impaired the defendant's ability to establish the favorable nature of the evidence and violated the defendant's right to due process.
We hold that the defendant's right to due process has been violated, due to the unilateral destruction of the video tape by the police.
REVERSED AND REMANDED.
MADDOX, JONES, ALMON,* BEATTY and ADAMS,* JJ., concur.
* Although Justices Almon and Adams did not sit at oral argument, they have studied the record and briefs and have listened to the tape of oral argument.